WO                                                                          JB

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| Donald Dean, | No.  CV 13-1202-PHX-GMS (MEA) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER** |
| Terry Allred, et al., | |
| Defendants. | |

On October 28, 2013, Plaintiff filed his Amended Complaint in compliance with the Court's October 7, 2013 Order granting motions to dismiss filed by Rowe and Wexford (Doc. 24).  Rowe and Wexford separately move to dismiss the claims presented against them in the Amended Complaint (Docs. 29, 36). Both motions will be granted in part and denied in part.

I.      **BACKGROUND**

Plaintiff, an inmate incarcerated by the Arizona Department of Corrections, claims that he was ordered to perform labor for Defendants Common Market Equipment (CME) Company and Swift Transportation (Doc. 24 ¶ 22 (Am. Compl.)).  Plaintiff did not receive safety or specialized training in moving heavy equipment or machinery but was

tasked with moving heavy equipment and machinery (*id.* ¶¶ 23-24).  Plaintiff alleges that on September 7, 2012, a negligently maintained 10-ton capacity jack fell onto his right hand and crushed and fractured multiple bones (*id.* ¶ 25).  Plaintiff was taken to Tempe St. Luke's Hospital where the attending physician determined that Plaintiff required surgery but that surgery could not be performed that day because of swelling in Plaintiff's hand (*id.* ¶¶ 27-28).  Plaintiff was ordered to return to the hospital for surgery within 7 to 10 days (*id.* ¶ 29).

Plaintiff was returned to the Arizona State Prison Complex-Lewis on September 8, 2012, and examined by Defendant Miner (*id.* ¶¶ 30-31).  Plaintiff informed Defendant Miner that he was required to return to the hospital for surgery within 7 to 10 days (*id.* ¶¶ 32-33).  Plaintiff was not returned to the hospital for surgery (*id.* ¶ 34).  Plaintiff submitted an inmate letter requesting immediate medical attention, but no action was taken (*id.*).  Plaintiff was brought back to the hospital on September 30, 2012, and informed that the surgical window had closed and that surgery could no longer be performed without causing further injury or damage to Plaintiff (*id.* ¶¶ 35).  Plaintiff's right hand is now permanently disfigured, and he suffers from a partial loss of function (*id.* ¶ 36).  From these facts, Plaintiff presents deliberate indifference and negligence claims against Facility Health Administrator Terry Allred, Medical Program Manager Richard Rowe, health care provider Miner, an unnamed Clinical Coordinator, and Wexford Health Sources (Counts I-III).  Plaintiff also presents a negligence claim against

1  CME and Swift (Count IV).  Rowe moves to dismiss the claims against him in Counts I

2  and III[1] and Wexford moves to dismiss Counts II and III (Docs. 29, 36).

3  **II.  LEGAL STANDARD**

4

5        On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all

6  allegations of material fact are assumed to be true and construed in the light most

7  favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

8  2009).  Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

9  theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

10  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid

11  dismissal, a complaint need contain only "enough facts to state a claim for relief that is

12  plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

13  principle that a court accepts as true all of the allegations in a complaint does not apply to

14  legal conclusions or conclusory factual allegations.  *Ashcroft v. Iqbal*, 566 U.S. 662, 678

15  (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

16  conclusory statements, do not suffice."  *Id.*  "A claim has facial plausibility when the

17  plaintiff pleads factual content that allows the court to draw the reasonable inference that

18  the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not

19  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

20  defendant has acted unlawfully."  *Id.*  To show that the plaintiff is entitled to relief, the

[1] Allred joins Rowe's motion as a substitute for filing an Answer but does not assert that the claims against him are subject to dismissal (Doc. 41).

complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). "Something labeled a complaint . . ., yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180.

## III.    Analysis

### A.    Rowe

As an initial matter, Plaintiff concedes that the negligence claim against Rowe in Count III should be dismissed (Doc. 30 at 6); therefore, the Court will grant Rowe's motion as to this claim.

As for Plaintiff's deliberate indifference claim, Rowe maintains that the amended pleading's factual allegations remain too vague and conclusory and mirror the allegations in the original Complaint. But in his original Complaint, Plaintiff presented merely a single allegation against Rowe: that he is directly responsible for authorizing certain contracted medical services and treatments, including Plaintiff's surgery, and that this surgery did not occur, which caused Plaintiff permanent damage (Compl. ¶ 42). But, critically, there was no allegation about whether Rowe approved the surgery, which required dismissal.

In contrast, in the amended pleading, Plaintiff affirmatively alleges that Rowe is responsible for authorizing procedures like Plaintiff's surgery; knew of the risk to

Plaintiff if the surgery did not occur; and, yet, *did not authorize* the surgery within the specified time frame (Am. Compl. ¶¶ 50-53 (emphasis added)).    These factual allegations, taken as true, are sufficient to require Rowe to answer.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (a single egregious failure can constitute deliberate indifference).    Contrary to Rowe's interpretation, these are allegations of Rowe's individual involvement in the alleged constitutional violation, and they are plainly not based on a *respondeat superior* theory of liability.  It is not necessary at this stage for Plaintiff to know or plead Rowe's motivation for failing to authorize Plaintiff's surgery.[2]    Rather, because Plaintiff alleges that Rowe knew of the risk to Plaintiff and still did not authorize the surgery, Rowe's motion to dismiss must be denied on this claim.

### B.    Wexford

#### 1.    Deliberate Indifference Claim (Count II)

Wexford also moves to dismiss, arguing that the allegations in the Amended Complaint fare no better than the allegations in the original and are too conclusory to state a plausible claim for relief (Doc. 36 at 8-9).   Plaintiff alleges that Wexford (1) utilized less-qualified staff to evaluate, diagnose, and recommend treatment for inmates when a referral to an outside specialty care provider was medically necessary; (2) permitted less-qualified staff to substitute their own medical judgment for the

---

[2] The Court also denies as moot Rowe's request to strike Plaintiff's reference to material in another action because it is not necessary to consider the information to resolve the motion to dismiss (Doc. 33 at 2 n.1, ref. Doc. 30 at 4 n.2).

judgment of outside surgeons and specialty care providers; (3) failed to train and supervise its medical staff in the proper screening, scheduling, and prioritizing of medical care; and (4) deliberately delayed inmate medical treatment in the hope that medical issues would resolve without medically-necessary treatment or referrals to costly outside specialty care providers (Am. Compl. ¶¶ 72-76).  As a consequence of these policies, Plaintiff contends, he was not returned for his surgery and suffered permanent damage to his hand.

The parties correctly articulate the standard for stating a claim based upon entity liability.  *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see also Tsoa v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (*Monell*'s requirements apply to § 1983 suits against private entities acting under color of law).  A policy or custom under *Monell* may be shown through: (1) a longstanding practice or custom which constitutes the "standard operating procedure" of the entity; (2) the decision of a decision-making official who was a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) when an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.  *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005).

As with his original Complaint, Plaintiff again appears to allege three distinct *Monell* claims: (1) policies of constitutional violations; (2) a pattern and practice of constitutional violations; and (3) a failure to properly train employees.  But Plaintiff also again fails to allege sufficient facts to sustain a *Monell* claim under any of these theories.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, Plaintiff fails to allege any *facts* as to Wexford's actual policies. "In order to establish an official policy or custom sufficient for *Monell* liability, a plaintiff must show a constitutional-right violation resulting from an employee acting pursuant to an expressly adopted official policy." *Delia v. City of Rialto,* 621 F.3d 1069, 1081 (9th Cir. 2010). No such factual allegations are present in the amended complaint.

Rather, Plaintiff's main claim stems from an alleged practice or custom of unconstitutional action. To prevail on this theory, Plaintiff must show "the existence of a widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988)). But the only specific events presented are what happened to him and an incident when a nurse "tainted an insulin supply exposing hundreds of ADC inmates to Hepatitis C and HIV" (Am. Compl. ¶ 70). These events are patently insufficient to establish a practice "so permanent" to equal the "force of law." *Id.* Further, as the Court described in its previous Order, the asserted fact that at least 20 contracts with Wexford have been terminated or have not been renewed does not supply the necessary facts to establish that the alleged deficient conduct may be the "traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The foregoing analysis equally applies to Plaintiff's failure-to-train theory because "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *See*

*Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011).  No facts giving rise to such an inference are present here.

Plaintiff's reliance on allegations about Wexford's practices in his response are also insufficient to save his claim.  Generally, when resolving a motion to dismiss for failure to state a claim, the court may not consider materials outside the pleadings.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, the court may consider "exhibits attached to the complaint [ ] and matters properly subject to judicial notice." *Outdoor Media Group v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007).  If the court considers evidence outside the pleadings and beyond these exceptions, it must convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  Moreover, Rule 12(d) requires that in the event of conversion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

The materials Plaintiff relies on were not attached to the amended complaint nor has Plaintiff requested judicial notice of them; therefore, these materials are matters outside the pleadings.  Because not all parties were given a reasonable opportunity to present all pertinent material to the motion, the Court will not rely on the materials submitted by Plaintiff and declines to treat the motion to dismiss as a motion for summary judgment.  *See Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir. 1996) (noting that a Rule 12(b)(6) motion is treated as motion for summary judgment, "if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, *and* if the district court relies on those materials") (emphasis added)).

For all these reasons, Plaintiff fails to state a deliberate indifference claim against Wexford, and its motion to dismiss this claim will be granted.

## 2. Negligence Claim (Count III)

In his amended pleading, Plaintiff again presents two theories to support his negligence claim against Wexford.   The first is a direct negligence claim based on Wexford's failure to properly train or supervise its staff and the second is a *respondeat superior* claim based on Wexford's employees' failure to ensure Plaintiff received the necessary surgery for his injury.   Again, the first theory fails for the reasons discussed above.

As for the *respondeat superior* negligence claim, Wexford argues that it may only liable if one of its employees committed a tortious act (Doc. 36 at 9-11).   It further contends that Plaintiff's claim cannot succeed based upon his allegations against Allred, Rowe, and the Unnamed Clinical Coordinator because Plaintiff only alleges "upon information and belief" that they are Wexford employees (Am. Compl. ¶¶ 8-9).   As for Miner, Wexford contends that Plaintiff fails to allege that Miner made any decision regarding Plaintiff's care that would impute liability to Wexford.

"[A]lthough allegations 'upon information and belief' may state a claim after *Iqbal* and *Twombly,* a claim must still be based on factual content that makes liability plausible, and not be 'formulaic recitations of the elements of a cause of action.'"   *Klohs v. Wells Fargo Bank, N.A.,* 901 F.Supp.2d 1253, 2012 WL 4758126, at *5 n. 2 (D. Haw. Oct. 4, 2012) (*quoting Long v. Yomes,* 2011 WL 4412847, at *4 (D. Haw. Sept. 20, 2011) *quoting Twombly,* 550 U.S. at 555); *see also Solis v. City of Fresno,* 2012 WL 868681, at

*8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."). "The facts alleged must be sufficient to nudge the claims 'across the line from conceivable to plausible.'" *Solis,* 2012 WL 868681, at *8 (*quoting Twombly,* 550 U.S. at 547).

Plaintiff concedes that Rowe was never a Wexford employee and therefore his actions cannot form the basis for liability against Wexford.  As for Allred and the Unnamed Clinical Coordinator, Plaintiff's conclusory allegations about their employment with Wexford are insufficient to state a claim and Plaintiff admits that he cannot affirmatively allege that they were Wexford employees (Doc. 39 at 11).  Any *respondeat superior* negligence claim against Wexford based on their conduct is dismissed.

The record confirms that the only plausible *respondeat superior* negligence claim against Wexford can be based on Miner's actions (Doc. 40 at 7).  Contrary to Wexford's argument, the Court finds that Plaintiff's allegations against Miner are sufficient to state such a claim.  Plaintiff specifically contends that Miner misrepresented the hospital physician's discharge instruction in Plaintiff's medical record by indicating that Plaintiff should follow up with the surgeon for "possible" surgery despite her knowledge that Plaintiff *required* surgery (Am. Compl. ¶¶ 56-59).  Because this is sufficient to state a claim against Miner, it is sufficient to state a *respondeat superior* claim against Wexford. The Court will therefore deny Wexford's motion to dismiss on this aspect of Plaintiff's claim.

///

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Rowe's Motion to Dismiss and Wexford's Motion to Dismiss (Docs. 29, 36).  All other matters must remain referred to the Magistrate Judge for disposition as appropriate.

(2)     Rowe's Motion to Dismiss (Doc. 29) is **granted in part and denied in part**.  Plaintiff's negligence claim against Rowe in Count III is **dismissed**.  The motion is otherwise **denied**.

(3)     Wexford's Motion to Dismiss (Doc. 36) is **granted in part and denied**.  Count II against Wexford is **dismissed**.  Count III against Wexford is dismissed as to any reliance on the actions of Rowe, Allred, and Unnamed Clinical Coordinator.  Plaintiff's respondeat superior negligence claim based on Miner's conduct remains.

(4)     Rowe, Allred, and Wexford must file an Answer within 14 days of this Order.

Dated this 22nd day of January, 2014.

_A. Murray Snow_

/G. Murray Snow
United States District Judge